UNITED STATES DISTRICT COURT <u>FOR ONLINE PUBLICATION</u>
EASTERN DISTRICT OF NEW YORK <u>ONLY</u>
-------------------------------------------------------------- X
:
DAMON WARREN, :
:
Petitioner, :
: MEMORANDUM
: <u>AND ORDER</u>
- against - :
:
ROBERT ERCOLE, Superintendent, : 07 CV 3175 (JG)
Green Haven Correctional Facility :
:
Respondent. :
-------------------------------------------------------------- X

A P P E A R A N C E S :

       DAMON WARREN
           03A0020
           Green Haven Correctional Facility
           P.O. Box 4000
           Stormville, NY 12582
           Petitioner, *pro se*

       CHARLES J. HYNES
           District Attorney
           Kings County
           350 Jay Street
           Brooklyn, NY 11201
       By:  Leonard Joblove
           Howard B. Goodman
           Attorney for Respondent

JOHN GLEESON, United States District Judge:

       Damon Warren, a prisoner incarcerated in the Green Haven Correctional Facility

pursuant to a judgment of the New York State Supreme Court, Kings County, petitions for a writ

of habeas corpus under 28 U.S.C. § 2254. Warren challenges his conviction following a jury

trial of one count of assault in the first degree, two counts of criminal possession of a weapon in

the second degree, and one count of criminal possession of a weapon in the third degree. He

seeks habeas relief on the nine grounds discussed below.  For the reasons set forth below, the petition is denied.

BACKGROUND

A.     *The Offense Conduct*

The government's evidence at trial established that shortly before 2:00 AM on October 20, 2001, Warren, accompanied by an unnamed individual, repeatedly shot at the abdomen and lower back of the unarmed Jocelyn Pierre.

About an hour before the shooting, Brooklyn resident Greta Mack had looked out the window of her apartment and saw that her van was parked too far from the curb.  She noticed two individuals standing near her car.  One was the petitioner Damon Warren, known to Mack as "Bones."  Mack had known Warren for ten years, and had attended bible classes with Warren's mother.

Mack went outside to move the car, but once she got into it, she decided to go to the store to get some beer, even though she already had had a couple of drinks.  She went back inside to get her pocketbook.  As Mack was leaving the building to return to her car, her son, John Mack, and his friends, Romain Abelson and Jocelyn Pierre saw her leaving and decided to join her.

As Mack was driving her van away from its parking space, she accidentally struck the parked car behind her, and its car alarm went off.  Warren started to walk toward the van.  Abelson, Pierre, Greta Mack and John Mack all exited the van.  Sensing imminent danger, John urged his mother to return to her apartment, but to no avail.  Greta Mack saw Warren shoot at Pierre.  Greta and John Mack began to run away by the third shot.  Warren started firing at them,

but they were able to escape unharmed.  When Pierre's friends came to his aid, Warren fired at them as well.  As a result of Warren's acts, Pierre was permanently paralyzed.

Soon after the shooting, Police Officers Acomata and Hong arrived at the scene, where Hong recovered five spent shell casings from the ground near Pierre.  Pierre was taken to Kings County Hospital.  Detective Janet Davidson, the lead investigator, spoke with Pierre, Greta Mack, John Mack and Abelson.  Davidson learned from them that Warren was the shooter and that he could be found at the home of his girlfriend, Lauren Valentin.[1]  About two months later, other detectives from the precinct spotted Warren with a gun and called out his name, prompting Warren to flee into Valentin's apartment building.   The detectives followed him, but were unaware that Warren's girlfriend lived in the building and were unable to find him.   A few days later, Detective Davidson, accompanied by two other officers, went to Valentin's apartment.  Valentin let them into her apartment, and called out for Warren to come out.  He stepped out of a rear bedroom, at which point the officers arrested him.  Warren was unarmed.

The detectives brought Warren to the precinct and advised him of his *Miranda* rights.  Warren affirmatively acknowledged an understanding of his rights, but did not respond to Davidson when she said "Now that I have advised you of your rights, are you willing to answer questions?"  Trial Tr. 308-314, 330.  Davidson described why he had been arrested.  Warren then denied committing any wrongdoing and said that he knew who shot Pierre, but could not divulge the information.  The detectives returned to Valentin's apartment, and Valentin's mother Angela Irizarry consented to a search of the apartment, which yielded a loaded .22 Browning Buckmark

---

[1]       Greta Mack was not initially forthcoming to the police.  On the morning of October 21, 2001, Pierre's mother, Imacula Pierre, invited Detective Davidson to listen in on her telephone conversation with Mack. On a three-way call arranged by Davidson (whose presence on the line was unknown to Greta Mack), Mack told Mrs. Pierre that Warren, who Mack identified as Damon and "Bones," was the shooter.  However, later that day, when Davidson went to Mack's home, Mack insisted that she had been drunk and knew nothing about the shooting. A week later, Mack contacted the precinct and said she wanted to tell what had happened.  Davidson brought her to the precinct, where she essentially reported the statement she had made over the phone to Mrs. Pierre, and she identified Warren from a photo array.

caliber semi-automatic pistol from the hamper in the room where Warren had been arrested earlier. Back at the precinct, Warren later admitted that the gun was his, but claimed that he had gotten it from a cousin two to three days after the shooting of Pierre. Warren told Davidson that he know who shot Pierre, and that person looked like Warren, but he could not reveal the shooter's identity out of fear for his family's safety.

Detective Mark Basoa, an expert in firearms operability and microscopic comparisons, examined the .22 caliber Browning Buckmark semi-automatic pistol and the five shell casings recovered at the scene, and concluded that the shell casings were fired from that weapon.

B.    *The Procedural History*

1.    *The Trial Court Proceedings*

Warren was charged in an indictment with one count of attempted murder in the second degree, one count of assault in the first degree, two counts of criminal possession of a weapon in the second degree and two counts of criminal possession of a weapon in the third degree. On November 15, 2002, the jury found Warren guilty of first-degree assault, both counts of second degree criminal possession of a weapon and third degree criminal possession of a weapon. The jury deadlocked on the attempted murder count and the trial court dismissed it on consent. Warren was sentenced as a second felony offender to concurrent prison terms of twenty-five years on the assault count, fifteen years for each second-degree weapon possession count, and three and one-half to seven years for the third-degree weapon possession count.

2.    *The Direct Appeal*

On appeal to the Appellate Division, Second Department, Warren argued that certain comments in the prosecution's opening statement and summation deprived him of a fair

trial. In a *pro se* supplemental brief, Warren argued that (1) he was arrested without probable

cause; (2) he was arrested in his girlfriend's apartment without a warrant and the apartment was

illegally searched; (3) the police detective who interrogated him violated his *Miranda* rights; and

(4) the government knowingly presented the perjured testimony of a police detective during a

pretrial suppression hearing. On November 29, 2004, the Appellate Division affirmed the

convictions, holding that his challenges to the prosecutor's remarks were "largely unpreserved

for appellate review" and were in any case meritless because the remarks were either fair

comment on the evidence, responsive to defense counsel's summation, or harmless error. *People

v. Warren*, 785 N.Y.S.2d 498, 499 (2d Dep't 2004). The court then found that Warren's arrest

was based on probable cause, that the hearing court had properly determined that Warren's

pretrial statements to the police were voluntarily made after Warren had knowingly and

intelligently waived his *Miranda* rights, and that his remaining contentions were either

unpreserved for appellate review or without merit. *Id.* at 500. Warren sought leave to appeal,

and the New York Court of Appeals denied that application on February 25, 2005. *People v.

Warren*, 4 N.Y.3d 804 (2005) (Read, J.).

      3.     *The State Post-Conviction Motions*

      On October 25, 2004, Warren filed a *pro se* motion in the New York Supreme

Court to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10. Warren

raised two claims: (1) the prosecutor failed to present *Brady* material to the grand jury; and (2)

trial counsel was ineffective in failing to use various police reports and other documents in

challenging the government's case. On March 1, 2005, the trial court denied Warren's § 440

motion pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c) because both of his claims had

appeared on the record and could have been raised on Warren's direct appeal; the court further

held that, in any event, the claims were meritless. Warren's application for leave to appeal from the denial of his § 440 motion to the Appellate Division was denied on July 20, 2005.

On August 24, 2005, Warren filed a second *pro se* motion in the New York Supreme Court to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10. Warren raised the same claim of prosecutorial misconduct that appellate counsel had raised in Warren's main brief to the Appellate Division. On January 6, 2006, the trial court denied Warren's second § 440 motion as procedurally barred under N.Y. Crim. Proc. Law § 440.10(2)(a) because the claim had been previously determined on the merits during Warren's direct appeal. Warren's application for leave to appeal from the denial of his second § 440 motion to the Appellate Division was denied on May 9, 2006.

On July 3, 2006, Warren petitioned the Appellate Division for a writ of error *coram nobis*. Warren claimed that he had received ineffective assistance of appellate counsel claim, arguing that counsel (1) failed to raise a claim of ineffective assistance of trial counsel on the ground that counsel had failed to argue before the hearing court that Warren had invoked his *Miranda* rights; (2) failed to file a reply brief addressing a factual misstatement in the government's main brief; (3) failed to raise a claim of ineffective assistance of trial counsel based on the failure to call as witnesses Valentin and Irizarry to establish Warren's standing to contest his warrantless arrest in, and the subsequent search of, Valentin's apartment; (4) improperly raised on direct appeal an unpreserved claim of prosecutorial misconduct; and (5) failed to raise on direct appeal the claims raised by Warren in his first § 440 motion.

On October 17, 2006, the trial court denied Warren's petition for a writ of error *coram nobis. People v. Warren*, 821 N.Y.S.2d 924 (App. Div. 2006). Warren's application for

leave to appeal from the denial of his petition was denied on February 28, 2007. *People v. Warren*, 8 N.Y.3d 886 (2007).

    4.    *The Instant Petition*

        In the instant petition, dated July 13, 2007, Warren seeks relief on the following grounds: (1) the allegedly improper comments made by the prosecutor in his opening statement and summation deprived Warren of due process; (2) the police lacked probable cause to arrest him; (3) the police arrested him in Valentin's apartment without a warrant in violation of *Payton v. New York*, 445 U.S. 573 (1980), and he had standing to contest the subsequent search; (4) the state hearing court erred when it declined to suppress his post-arrest statements that were taken in violation of his *Miranda* rights; (5) the hearing court abused its discretion by crediting the testimony of Detective Davidson and the prosecutor committed misconduct at the hearing by presenting the perjured testimony of Detective Davidson; (6) the prosecutor failed to present exculpatory evidence to the grand jury; (7) his trial attorney rendered ineffective assistance of counsel; (8) duplicative of the first claim, the prosecutor's remarks during opening statement and summation denied him due process of law; and (9) appellate counsel rendered ineffective assistance.

        Two of Warren's nine claims are in procedural default because Warren failed to raise them on direct appeal. Warren does not show cause for the default or prejudice resulting therefrom. He also fails to show that a miscarriage of justice would result if I do not review his claims. In any event, these procedurally defaulted claims are without merit. The remaining claims that are not procedurally barred are also without merit, as the rejection of those claims was not contrary to or an unreasonable application of clearly established federal law.

DISCUSSION

A.    *The Standard of Review*

    1.    *Procedural Default*

Where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Harris v. Reed*, 489 U.S. 255, 261 (1989); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995); *see also Coleman v. Thompson*, 501 U.S. 722, 744, 750 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *but see Lee v. Kemna,* 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

Where the state appellate court rejects a state prisoner's claim as procedurally defaulted, the claim may be considered on federal habeas review only upon a showing of cause and prejudice, or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *Coleman,* 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989).  A petitioner may establish cause by showing "'that the factual or legal basis for a claim was not reasonably available to counsel . . .  or that some interference by officials . . .  made compliance impracticable.'"  *Coleman*, 501 U.S. at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)).  To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

If the petitioner cannot show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). The miscarriage of justice exception to the procedural default rule is "extremely rare," and should be applied only in "extraordinary circumstances." *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (citing *Schlup*, 513 U.S. at 321-22).

       2.     *AEDPA Deference*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the

Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

B.      *Warren's Claims*

        1.      *Prosecutorial Misconduct*

        As discussed above, the Appellate Division held that Warren's claim that he was deprived of a fair trial due to prosecutorial misconduct was "largely unpreserved" for appellate review.  I have previously held that a prosecutorial misconduct claim is not procedurally barred where the Appellate Division stated that the claim was "largely unpreserved," and then proceeded to decide the claim on the merits.  *Greiner*, No. 01-cv-2470, 2004 WL 943902, at *3 (E.D.N.Y. Apr. 28, 2004).  Analyzing the merits of Warren's claim under the AEDPA standard, I find that the state court's conclusion -- that "those remarks were either fair comment on the evidence, permissive rhetorical comment responsive to the defendant's summation . . . or, both individually and cumulatively, not so prejudicial as to constitute reversible error in light of the overwhelming evidence of the defendant's guilt," *People v. Warren*, 785 N.Y.S.2d 498, 499 (App. Div. 2004) -- was not contrary to or an unreasonable application of clearly established federal law.

        Habeas relief based on a claim of prosecutorial misconduct during the opening statement and summation is unavailable unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Pimentel v. Walsh*, No. 02 Civ. 570, 2003 WL 22493451, at *7 (S.D.N.Y. Nov. 4, 2003) ("To obtain relief on a prosecutorial misconduct claim, a habeas petitioner must show that 'the prosecutor engaged in egregious misconduct . . . amounting to a denial of constitutional due process.'" (ellipsis in original) (quoting *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1991))).  A petitioner "must demonstrate that he suffered

actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). In making this determination, the habeas court should consider the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of conviction absent the prosecutor's remarks. *Id.*

Warren argues that the prosecutor attempted to appeal to the emotions of the jury and endeavored to paint an inaccurate picture of Pierre as an innocent victim during his opening statement when he said,

> [T]he defendant Damon Warren, literally shattered the lives of several people at the corner of Bragg Street and Avenue W in Brooklyn. He turned the tranquility of a safe Brooklyn fall night into a shooting gallery. . . . He littered the streets with his bullets and their shell casings. He alone ruined one man's life, one man's ability to run with his children, one man's ability to walk down the aisle at his wedding; in fact to ever walk again.

Trial Tr. 167.

Similarly, Warren argues that the prosecutor attempted to appeal to the emotions of the jury at summation when he said "But for the grace of God, you guys are not sitting on a homicide panel. That's what's really going on here." Warren also contends that remarks in summation -- "No one is contesting that on October 20, 2001, Jocelyn Pierre [was] repeatedly shot at point-blank range, that Jocelyn Pierre's hands were up in the air no weapons and no bad words on his lips, that Jocelyn Pierre's spinal column is permanently damaged and he will never walk again . . ." -- were inflammatory, vouching and burden-shifting.

These comments are not constitutionally troublesome, even if some were inappropriate. The evidence established that Warren shot an acquaintance[2] multiple times, point-blank, in front of the victim's neighbors and friends. According to the government's expert

---

[2]    At his sentencing proceeding, Warren described Pierre as an "old friend of mine." Sent. Tr. at 16.

witness, Dr. Milton Calima, Warren caused Pierre to suffer permanent paralysis relegating him to a life in a wheelchair and self-catherization. A prosecutor is not prohibited from summarizing graphic and disturbing testimony. *See Darden v. Wainwright,* 477 U.S. 168, 180 (1986) (holding that the prosecutor's offensive comments reflecting an emotional reaction to the case were not enough to infect the trial with unfairness as to make the resulting conviction a violation of due process).

Warren also claims that the prosecutor impugned the trial defense counsel's integrity, distorted counsel's theory of defense and misled the jury by arguing facts not in evidence. But a prosecutor has broad latitude during summation, particularly when responding to defense counsel's summation. In each of the challenged statements, the prosecutor was, for the most part, commenting fairly on the evidence or responding to the defense summation, which extensively attacked the credibility of the People's witnesses. For example, the prosecutor responded to Warren's counsel's suggestion that Warren was being framed by urging the jury not to let counsel "pull the wool over your eyes." Trial Tr. 603. Defense counsel failed to object to this comment, and even so, such a comment does not rise to the level of constitutional error. The prosecutor can properly ask the jury not to be sidetracked by certain evidence and to instead focus on the issues that make out the prosecution's case.

Warren also claims that the prosecution misled the jury by referring to the events of September 11, 2001 (as an excuse for the police department's failure to conduct a DNA test on the clothing in the hamper where the gun was found). But defense counsel objected to that comment, and the court properly sustained the objection. The court further instructed the jury that there was no evidence supporting the remark. Trial Tr. 596-7. This was an adequate remedy to the prosecutor's inappropriate comment and did not prejudice Warren.

Warren further challenges the prosecutor's comment that DNA testing is not usually performed in this type of case. But that argument was only as good as the evidence on which it was based, to which the trial judge, in essence, referred the jury when defense counsel objected. I see no prejudice of constitutional dimension in that remark.

Warren's final claim of prosecutorial misconduct addresses the prosecutor's references to Irizarry and Valentin in his summation. Warren contends that because they were not witnesses at trial, the prosecutor argued matters not in evidence. There is no logic to that argument. In any event, the challenged remarks are not troublesome for the additional reasons that defense counsel failed to object and the prosecutor referred to Irizarry and Valentin only to comment fairly on Warren's conspiracy allegations.

In sum, the challenged statements in the prosecutor's opening statement and summation did not deprive Warren of a fair trial. The state court's decision rejecting these claims was neither contrary to nor an unreasonable application of federal law. Moreover, given the overwhelming evidence of guilt, even if those statements were inappropriate, they would not warrant the grant of habeas relief because they did not have a substantial and injurious effect or influence on the jury's verdicts. *See Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007).

2. *Fourth Amendment Claims*

Warren asserts two Fourth Amendment challenges to his arrest, both of which have already been fully litigated at a pretrial suppression hearing and rejected on the merits. I cannot grant habeas relief on these grounds.

Fourth Amendment claims cannot be raised on habeas review when an opportunity for "full and fair litigation" has been provided in state court. *Stone v. Powell,* 428 U.S. 465, 466 (1976) ("[W]here the State has provided an opportunity for full and fair litigation

of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").  The Second Circuit has already determined that New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10, is adequate.  *See Cappelan v. Riley,* 975 F.2d 67, 70 n.1 (2d Cir. 1992); *Taylor v. Kuhlmann,* 36 F.Supp.2d 534, 549 (E.D.N.Y.1999).

Warren first argues that the police lacked probable cause to arrest him because the witness allegedly did not have "a sound or stable visual and/or mindset to have known that the defendant was the alleged shooter." Pet. 6.   This claim is frivolous.  If the trauma of witnessing a shooting disabled people from being the basis of a police officer's probable cause to arrest the shooter, the city would become a lot safer for murderers.   In any event, the claim was litigated at a pretrial suppression hearing and was rejected by the court.  Resp't Ex. A.  Warren raised the claim on direct appeal, but the appellate court affirmed on the merits:  "The hearing court properly determined that defendant's arrest was based on probable cause, as provided by the eyewitness's positive identification of the defendant as well as from a photo array."  *Warren*, 785 N.Y.S.2d at 499.  For the reasons discussed above, I may not properly review the claim again here.

Second, Warren argues that he was arrested in violation of *Payton v. New York*, 445 U.S 573 (1980), and that he had standing to suppress the fruits of the search of his girlfriend's apartment.  Again, these issues were litigated in a pretrial suppression hearing, after which the hearing court rejected Warren's claim on the ground that he lacked standing to challenge the search because he did not have a reasonable expectation of privacy in his

girlfriend's apartment. Warren raised this issue on direct appeal, and the court denied the claim on its merits.

In both these cases, Warren not only had the opportunity to have his Fourth Amendment claim heard in the state court, but he actually litigated it when his attorney moved to suppress evidence. Thus, he cannot obtain habeas relief on these grounds.

3.     *The* Miranda *Claim*

Warren claims that he invoked his right to remain silent by failing to respond to Davidson's questions as to whether he wanted a lawyer. He contends that the "hearing court did not have any factual or legal basis" to find a voluntary and intelligent waiver. The Appellate Division rejected this claim on the merits, holding that "the hearing court properly determined that the defendant's were voluntarily made after the defendant knowingly and intelligently waived his *Miranda* rights." The AEDPA standard applies, and therefore I construe Warren's claim as a contention that the trial court's determination was objectively unreasonable.

I cannot conclude that the state court's adjudication of Warren's claim was based upon an unreasonable determination of the evidence before the trial court. Detective Davidson testified that she had advised Warren of his *Miranda* rights at about 4:20 pm on January 7, 2000, when he was brought into the precinct. Warren said "yes" when he was asked if he understood each of his *Miranda* rights. Hr'g Tr. 18-19. Once Davidson had advised Warren of his rights, she asked Warren, "Are you willing to answer questions?" *Id*. at 20. When Warren failed to respond, Davidson then asked for the second time if he wanted an attorney. *Id.* at 20-21. Warren again failed to respond, and Davidson wrote "refused to sign" on the form. *Id.* When Davidson explained why Warren had been arrested, Warren denied being present but said that he knew who had committed the crime. After Warren made this statement, he did not ask for an attorney

or say that he did not want to answer any more questions. *Id.* at 23. At about 7:00 pm, after the recovery of the gun from Valentin's apartment, Davidson showed Warren the gun, and he said he did not recognize it. Finally, at 11:30 pm, Warren asked to speak to Davidson again. After he was reminded generally of his *Miranda* rights and declined an opportunity to speak to a lawyer, he admitted that the gun was his and he had had it in Valentin's apartment. *Id.* at 29-30.

To establish that a defendant validly waived the Miranda rights, the government must prove by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving the right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995). Waiver may be inferred from "silence, coupled with an understanding of [the defendant's] rights and a course of conduct indicating waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The determination of whether suspects have knowingly and voluntarily waived their *Miranda* rights depends upon the totality of the circumstances. *See Fare v. Michael C.*, 442 U.S. 707, 725 (1979). A suspect's refusal to sign a written waiver form, standing alone, does not preclude a valid waiver. *United States v. Spencer*, 995 F.2d 10, 12 (2d Cir. 1993); *see generally*, G. Mehler, et al., *Federal Criminal Practice: A Second Circuit Handbook* § 7-7 (Lexis Nexis 2006).

The hearing court found that Warren knowingly and voluntarily waived his rights under *Miranda*. Those findings are amply supported by the testimony of Detective Davidson. Because it cannot reasonably be said that the state court's decision was based on an unreasonable determination of the facts, Warren's *Miranda* claim must be rejected.

4.        *Abuse of Discretion by the Hearing Court*

Warren argues that the Appellate Division improperly rejected his *pro se* claims (1) that the hearing court abused its discretion by crediting Davidson's testimony, and (2) that the prosecution committed misconduct at the hearing by presenting Davidson's allegedly perjured testimony.  These claims have no merit.  Whether a hearing court abused its discretion in crediting a witness's testimony is not a matter for a federal habeas court.  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1989); *see also Copland v. Walker*, 258 F.Supp. 2d. 105, 120 (E.D.N.Y. 2003) ("Even on direct appeal, credibility determinations are exclusively the domain of the trier of fact . . . . They cannot be revisited by federal courts in a habeas corpus proceeding.").  Warren's witness credibility claim is therefore without merit.  Though it is true that "[a] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment," *Napue v. Illinois*, 360 U.S. 264, 269 (1959),[3] there is no indication that anything of the sort occurred here.  Warren argues that (1) Davidson's testimony as to her awareness of an outstanding warrant for Warren was inconsistent; and (2) Davidson's testimony differed from that of Warren's mother.  But Warren offers no evidence that any of Davidson's testimony was false or material, much less that the prosecutor knew or should have known of its alleged falsity.  Just because Davidson's testimony was internally inconsistent does not necessarily establish perjury, nor does it prove that the prosecutor knowingly presented perjured testimony.  *See, e.g., Smithwick v. Walker*, 758 F.Supp. 178, 186

_____

[3]        The same is true when the government, "although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.*  Under this standard, I must set aside Warren's conviction if "the prosecution knew, or should have known, of the perjury," and if – under the strict materiality standard -- "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *United States v. Vozzella*, 124 F.2d 616, 619-20 (2d Cir. 1997).  The Second Circuit has declined to "draw the contours of the phrase 'should have known.'" *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003).  Because the Supreme Court has not clearly established that habeas relief is available in the complete absence of prosecutorial knowledge of perjury, I may not, consistent with § 2254(d)(1), grant relief on this ground. *See id.* at 345 n.2 (AEDPA overrules *Sanders v. Sullivan*, 863 F.2d 218 (2d Cir. 1988), which granted habeas relief in the absence of prosecutorial knowledge of perjury).

(S.D.N.Y. 1991) ("A prior inconsistent statement does not rise to the level of perjury."). Warren has also failed to establish the materiality of the issues involved, *e.g.*, whether Davidson had been aware of the warrant. Finally, there was powerful evidence supporting the jury's determination that Warren shot Pierre. Thus, the state court's rejection of this claim was neither contrary to nor an unreasonable application of federal law.

5.     *Failure to Present Exculpatory Evidence to the Grand Jury*

Warren's claim that the prosecutor failed to present exculpatory evidence to the grand jury is procedurally barred because Warren failed to raise the claim on appeal. Warren has failed to demonstrate cause for the default, prejudice therefrom or that a miscarriage of justice would result if the grand jury sufficiency claim were not reviewed here.

In any event, this claim does not have any merit because claims based on the sufficiency of the evidence presented to the grand jury are not cognizable under federal law. *See United States ex rel. Lloyd v. LaValle*, 304 F.Supp. 957, 958 (S.D.N.Y. 1964) (noting that there is no federal constitutional right that state court felony prosecutions be instituted by grand jury indictment). Moreover, federal law does not require a prosecutor to present exculpatory evidence to a grand jury. *See United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997) (citing *United States v. Williams*, 504 U.S. 36, 51-52, (1992)) ("A district court may not dismiss an otherwise valid indictment because the Government failed to disclose to the grand jury "substantial exculpatory evidence" in its possession.").

Even if there were error, "[a]ny error in the grand jury proceeding connected with the charging decisions [is] harmless beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. 66, 70 (1986). Indeed, "federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, [and] similar claims concerning a state grand jury proceeding

are a fortiori foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865

F.2d 30, 32 (2d Cir. 1989).

6.      *Ineffectiveness of Trial Counsel*

Warren's claim that he received ineffective assistance of trial counsel is

procedurally barred because all of the claimed failings of counsel were discernable from the trial

record yet Warren failed to raise these claims on direct appeal.[4]  Warren has failed to

demonstrate cause for the default, prejudice therefrom or that a miscarriage of justice would

result if the ineffective assistance of counsel claim were not reviewed here.

Even if I were permitted to examine the claim, I would reject it because the state

court did not unreasonably apply federal law in rejecting Warren's ineffectiveness claim.  The

Supreme Court has established the following standard for ineffective assistance claims:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction . . . resulted from a breakdown in the
> adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Thus, to make out this type of claim, the

petitioner must demonstrate both (1) that his attorney's performance "fell below an objective

standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at

694.  In assessing the reasonableness of counsel's performance, judicial scrutiny "must be highly

deferential," and the court must "indulge a strong presumption that counsel's conduct falls within

---

[4]      The § 440 court denied Warren's ineffectiveness claim on the merits after it found the claim to be
procedurally barred.

the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted); *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 4 (2003) (per curiam) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . .").

In assessing counsel's performance, I "must conduct an objective review . . . measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citations omitted) (quoting *Strickland*, 466 U.S. at 688-89)). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* at 521 (quoting *Strickland*, 466 U.S. at 688).

To establish the requisite effect of counsel's performance on the outcome of the proceeding, it is not sufficient if the petitioner shows merely that counsel's errors had "some conceivable effect" on the outcome. *Strickland*, 466 U.S. at 693. Rather, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* This determination, unlike the determination whether counsel's performance fell below an objective standard of reasonableness, may be made with the benefit of hindsight. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Warren argues that his attorney's performance was deficient because trial counsel failed to use certain documents at the suppression hearing and at trial to establish that the police

lacked probable cause to arrest him and that he was illegally arrested in his home without a

warrant. As the § 440 court found, Warren's claim amounts only to the sort of second-guessing

the *Strickland* standard disallows. Specifically, the state court found

> the trial record reveals defense counsel repeatedly disclosed to the
> jury and the Court the inconsistencies in the witnesses' version of
> events. Counsel use of the contents of the DD5s and other
> documents is evidenced by his attacking the credibility of the
> witnesses and detectives in this case. . . . That this strategy was
> ultimately unsuccessful did not render counsel's assistance
> ineffective.

*People v. Warren*, No. 159/2002 (N.Y. Sup. Ct. March 1, 2005)

At oral argument of the petition, Warren focused on trial counsel's decision not to

call Jocelyn Pierre, the victim of the shooting, as a witness at trial despite knowing from police

reports that Pierre had refused to identify Warren as the perpetrator and indeed had answered in

the negative when asked if Warren had shot him. This too amounts to impermissible second-

guessing of sound trial strategy.

First, there was no assurance that Pierre, if called as a witness at trial, would have

"exonerated" Warren. To be sure, he had not inculpated Warren when questioned by Detective

Davidson shortly after the crime, but neither had Greta Mack. Trial counsel had every reason to

be concerned that Pierre, once placed under oath, could become a liability, not an asset, for the

defense case.[5] Pierre could have testified that Warren shot him. Even if he testified that Warren

had *not* shot him, such testimony by an obviously fearful victim can be even more devastating

than inculpatory testimony. As the sentencing court observed, Pierre was likely "very glad that

the defendant is convicted, and he's probably wiping his forehead because he had nothing to do

---

[5]     At the charge conference, the prosecutor's explanation for the decision not to call the victim was
not that Pierre would exonerate Warren but rather that "he does not want to be a snitch. He doesn't believe in this,
and he refuses to come in." Trial Tr. 547.

with the conviction." Sent. Tr. at 14. Defense counsel had every right to consider such circumstances in making his decision not to call Pierre, and we must presume he did so.

Second, defense counsel made much of the prosecutor's failure to call Pierre as a witness. He sought and obtained a missing witness charge that was quite favorable to the defense, *see* Trial Tr. 633 (instructing the jury that failure to call Pierre would support an inference that his testimony "would not support or would even contradict the testimony of the People's other witness, Greta Mack), and made that charge a centerpiece of the defense at summation, *see id*. at 583-85. The strategy obviously did not work perfectly but a disagreement with trial counsel's strategy does not amount to a failure to provide meaningful representation.

In sum, Warren has failed to demonstrate deficient performance by trial counsel in his case.

### 7. *Ineffectiveness of Appellate Counsel*

Warren claims that he received ineffective assistance of appellate counsel in that appellate counsel failed to raise ineffective assistance of trial counsel for his (1) failure to argue at the suppression hearing that Warren had invoked his right to remain silent; (2) failure to file a reply brief addressing a factual misrepresentation by the government in its main appellate brief; (3) failure to call Valentin and her mother, Irizarry as witnesses; (4) failure to preserve the prosecutorial misconduct claim; (5) failure to move to dismiss the indictment for alleged prosecutorial misconduct before the grand jury; and (6) failure to use certain documents to attack the prosecution's evidence on whether there was probable cause to arrest. Warren raised this claim in an application for a writ of error c*oram nobis*, which the Appellate Division denied on the merits. The state court's decision was neither contrary to nor an unreasonable application of clearly established federal law.

Although the Supreme Court formulated the *Strickland* test described above in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo*, 13 F.3d at 533 (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)); *see also Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices any more than it may do so in evaluating the performance of trial counsel. *See Mayo*, 13 F.3d at 533 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker. *Cf. Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) ("[R]elief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy.").

Warren has failed to show that the state court's decisions rejecting his ineffective assistance claim was wrong, let alone unreasonable. I have already found in the foregoing discussion that most of the underlying claims are meritless, and therefore appellate counsel was not ineffective for failing to raise them. *See, e.g.*, *Rolling v. Fischer*, 433 F.Supp. 2d 336, 351 (S.D.N.Y 2006) ("[T]here can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless."). The remaining claims -- that appellate counsel did not claim ineffective assistance of trial counsel for its failure to file a reply brief addressing a factual misrepresentation by the government in their

main appellate brief and for its failure to call Valentin and Irizarry as witnesses -- are likewise without merit.

Failing to file a reply brief does not constitute deficient performance, nor was Warren prejudiced by counsel's decision not to do so, for appellate counsel had corrected the factual misrepresentation by convincing the district attorney to write a letter to the Appellate Division correcting the error. Trial counsel's decision not to call Valentin and Irizarry as witnesses at the suppression hearing and at trial was a tactical decision, and not one that supports a deficiency argument. *United States v. Best,* 219 F.3d 192, 201 (2d Cir. 2000). The state court's decision was not contrary to nor an unreasonable application of clearly established federal law. Warren was ably represented in a case that included overwhelming evidence of guilt.

## CONCLUSION

For the foregoing reasons, the petition is denied.[6] As Warren has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
            November 27, 2007

---

[6] On October 30, 2007, Warren requested an extension of time in which to file a reply to the government's memorandum in opposition to his petition for a writ of habeas corpus. This request is denied in light of the opportunity Warren had to respond to the government during oral argument and in light of the meritless arguments he has advanced.